A referee is justified in refusing to certify that a brief abstract contains all the evidence given in support of his findings of fact to which exceptions are taken.

Appeal from special term, Kings county.

Action by George B. Abbott, as administrator of Eunice Chapman, against Margaret J. Thomas and others, to recover for money loaned. The action was tried by a referee, who directed judgment dismissing the complaint. This appeal is from an order denying plaintiff's motion to resettle case on appeal, and refusing to send it back to the referee for resettlement.

Argued before BARNARD, P. J., and PRATT and DYKMAN, JJ.

*Burnett & Whitney,* for appellant. *Deane & Chamberlain,* (*Cephas Brainerd, Jr.,* of counsel,) for respondents.

BARNARD, P. J.    Upon the trial of the issue before the referee, a large mass of testimony was taken.    The referee made 34 findings of fact, and thereupon dismissed the complaint, with costs.    The plaintiff excepted to the fourth finding, which was that George M. Chapin was the agent of Eunice Chapman "in all matters and things referred to in this action."    This exception is applied, so far as respects this agency, to the fifteenth, nineteenth, twentieth, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, and the fifth finding.    An exception is also taken to the twenty-eighth finding. The case, as proposed, is an abstract of some six folios.    The referee refused to insert in it that it contained all the evidence given in support of the findings of fact to which exceptions are taken.    The plaintiff's attorney swears that this abstract contains the scope of the case.    The defendant's attorney makes an affidavit that the greater part of the evidence to sustain the findings is omitted.    The evidence actually given is not presented.    It is for the referee to settle the case, and upon this paper the inference is plain that he is right in withholding his official certificate that the case contains all the evidence in support of the findings.    From our knowledge of the trial of cases it is evident that the abstract should not be deemed to contain all the evidence.    The referee did right in refusing to exercise so dangerous a power as to determine that the brief abstract represented all the evidence on the trial in support of the findings in question.    Order affirmed, with costs and disbursements, and motion denied, with $10 costs.    All concur.

---

### MONTGOMERY v. LONG ISLAND R. CO.

*(Supreme Court, General Term, Second Department.    July 2, 1889.)*

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT.

Plaintiff, a woman 45 years of age, was thrown by defendant's negligence from its car, falling on her head, causing a depression in the skull.    Her right side was hurt from her waist to her feet, causing her much pain.    One knee joint was injured so as to make her lame, and at times she could not step.    Her physician testified that "the enlargement of the [knee] joint, the depression of the skull, in fact, the whole condition that I found there, is undoubtedly permanent."    No actual pecuniary loss was shown.    *Held,* that a verdict for $3,000 was not so excessive as to call for a new trial.

Appeal from circuit court, Kings county.

Action by Jane Montgomery against the Long Island Railroad Company for injuries received while a passenger on defendant's cars.    The plaintiff, after describing the accident, testified as to the nature of her injuries as follows: "I was helped up by a gentleman and the little girl, and the little girl helped me over to my daughter.    Jane Givens helped me over.    I stayed all night.

Then I had the doctor examine me, and went to 667 Bergen street, and remained there. The doctor came there to see me. I live there. I have an easy place, where I haven't very much to do. I got around the best way I could, because it is a good home." "*Question*. Were you confined to the house at all? *Answer*. Yes, sir. I hadn't to go out of the house for nothing. *Q.* What effect has this injury had upon your ability to walk and get around? What effect does it have? *A.* Well, sir, I am very lame, sir. *Q.* And have you been lame ever since? *A.* Yes, sir. *Q.* Were you lame before? *A.* No, sir. Never in my life. Never had a doctor in my life before. *Q.* Had you ever had any trouble or lameness in that limb at all? *A.* No, sir. Never. *Q.* Did you suffer pain? *A.* Oh, I suffered pain the whole side down. *Q.* How about your head? *A.* Well, my head is light since, sir. *Q.* Was there any contusion or bruise upon your head? *A.* Yes; sir. There is yet. The doctor seen it. I had the doctor five or six times. I was working at service. I was getting at that time $12.00 a month. I was not able to work all the while. *Q.* How does this injury affect you in your endeavors to walk,—get around? *A.* Well, I am lame, sir. *Q.* You are lame? *A.* Yes, sir. It pains me. Sometimes I cannot step. I have to halt on the street when a sudden pain comes over me. *Q.* Is there any difference in the size of the joints of your knees? *A.* Oh, yes, sir. *Q.* What is the difference in the size? Which is the largest? *A.* The right knee, sir, that was hurt; the one that was injured. It has been so since the 1st of March,—since the injury. There was never any difference before that I noticed." Dr. Phillips, who examined plaintiff at her request, testified as follows: "*Question*. At my request, have you made an examination of Mrs. Montgomery to see if she is suffering from any injury? *Answer*. I did. *Q.* How many examinations have you made? *A.* One. *Q.* In the presence of a physician for the company? *A.* Yes, sir. In connection with the physician of the Long Island Railroad. *Q.* What did you find her to be suffering from, doctor? *A.* Well, we found certain conditions, the result of that injury. That is, we found a depression of the outer table of the skull; we found an enlargement of the bones entering into the joint of the right knee; we found more or less *crepitus* under the *patella*, that is, the knee-cap; we found certain scars upon the right knee; and we found certain tenderness over the lower region of the spine and the hip. I should say that, in brief, that constituted about the subject of the examination. *Q.* What effect does that condition that you found her limb to be in have upon her ability to use it? *A.* It would interfere with the free use of the limb. *Q.* Would such injuries as that necessarily produce pain? *A.* They would. *Q.* Are you able to state whether it is permanent or not from the examination that you made? *A.* The enlargement of the joint, the depression of the skull, in fact, the whole condition that I found there, is undoubtedly permanent. *Q.* You saw those scars, did you not, on the limb? *A.* I did. *Q.* What was the appearance of those scars? *A.* It had the appearance as if it had been burned. It looked like the scar from an old burn." The testimony of the physician called by the company was confined chiefly to the point that plaintiff's injuries could have been produced by causes other than the accident described. The jury found for plaintiff, and awarded her $3,000. On motion for new trial the verdict was set aside, BARTLETT, J., delivering the following opinion: "The evidence in this case was amply sufficient to warrant the finding that the plaintiff was injured in consequence of the negligence of the defendant, and the verdict could not be deemed excessive if the proof showed that the plaintiff's lameness was permanent. But I did not understand the physician so to testify, nor do I think such is the necessary import of his testimony, as it appears in the stenographer's minutes, now that they have been written out. In the absence of plain proof of permanent lameness, I am convinced that so large a verdict as $3,000 should not be allowed to stand, when it is considered that no loss of wages was estab-

lished, nor any expenditure for medical attendance, nor any actual pecuniary loss whatever. The verdict must be set aside as excessive under the circumstances, and a new trial must be granted upon payment of costs by the defendant." Plaintiff appeals.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Dailey & Bell*, (*A. H. Dailey*, of counsel,) for appellant. *Hinsdale & Sprague*, (*E. B. Hinsdale*, of counsel,) for respondent.

BARNARD, P. J. The plaintiff was a passenger on the defendant's railroad on the 1st of March, 1888. The train stopped at her station, and as she was getting off the platform, and before she got upon the ground, the train suddenly started, and the plaintiff was thrown off. She fell upon her head. This bruise swelled up to the size of an egg, and has left a depression in the skull. The plaintiff's right side was hurt from her waist to her feet. She has suffered pain in this side down to the time of the trial. The injured knee-joint has swelled, and has remained larger than the other one. She is lame, and sometimes cannot step. The surgeon testifies that "the enlargement of the joint, the depression of the skull, in fact, the whole condition that I found there, is undoubtedly permanent." The injuries are proven to be of such nature as would produce pain. The loss of the free use of her leg is proven to be a permanent result of her injury. The jury gave a verdict of $3,000. The verdict was not excessive, under the rules governing verdicts in such cases. The damages must be so large as to indicate some prejudice or some undue influence. The verdict is not so excessive as to call for a new trial on that account. The verdict should therefore be allowed to stand. Order reversed, with costs. All concur.